<u>NOT FOR PUBLICATION</u>

[16, 19, 20, 22, 23, 24]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ALIT LIMITED, | : | |
| Plaintiff, | : | Civil Action No. 06-cv-04500 (FLW) |
| v. | : | |
| BROOKS INSURANCE AGENCY, AND AMERICAN EQUITY INSURANCE COMPANY, | : | OPINION |
| Defendants. | : | |

<u>WOLFSON, United States District Judge</u>

Presently before the Court is a Motion for Summary Judgment by Plaintiff, Alit Limited ("Alit") on its own behalf and on behalf of all other members of the Lloyd's Syndicate, against Defendants, Brooks Insurance Agency ("Brooks") regarding the arbitration of four binding insurance authority agreements, and against American Equity Insurance Company ("AEIC"), Brooks' errors and omissions carrier, compelling it to defend Brooks in the English arbitration and a declaration regarding the policy limits in the AEIC/Brooks insurance policy. Plaintiff seeks judgment as follows: (1) compelling Brooks to arbitrate the dispute over the insurance

-1-

authority agreements in London, England under English law; (2) compelling AEIC to defend Brooks in the English arbitration; and (3) declaring the limits of liability under the AEIC Errors and Omissions Policy ("American Equity Policy") with Brooks as $5,000,000.  The Court has considered the moving, opposition and reply papers, and holds that Plaintiff has standing to pursue relief under the Declaratory Judgment Act.  The Court grants summary judgment on issues one and two, since Brooks has indicated to the Court its agreement to arbitrate the dispute in London and AEIC has agreed to defend Brooks in that proceeding; however the Court denies summary judgment on the issue of policy limits, because it is premature.  Furthermore, the Court is administratively terminating this proceeding which may be re-opened at a later date, pending the outcome of the English arbitration regarding the Binding Authority Agreements.

**I.    BACKGROUND**

The Plaintiff filed a complaint against Brooks and AEIC in the United States District Court of the District of New Jersey on September 22, 2006.  (Compl. Ex. B).  According to the Complaint and attachments, Plaintiff and Brooks entered into four Binding Authority Agreements from 1998 through and including 2001, which permitted Brooks to bind insurances on behalf of the Plaintiff in accordance with the terms and conditions set out in the Agreements.  (Compl. Ex. B, C, D, E).  Plaintiff alleges that Brooks committed several breaches of the Binding Authority Agreements, particularly issuing policies outside the scope of its authority.  The Plaintiff seeks a judicial order compelling Brooks to arbitrate this dispute in London, England and have AEIC provide Brooks a defense during the English arbitration.

The Binding Authority Agreements mandate that an arbitration between the parties must be venued in London, England under English Law.  In particular, the Binding Authority Agreements provide:

> **Section 36**
>
> **ARBITRATION**
>
> 36.1   All matters in difference between the parties arising under, out of or in connection with the Agreement including formation and validity, and whether arising during or after the period of the Agreement, shall be referred to an arbitration tribunal in the manner hereinafter set out.
>
> . . .
>
> 36.5   The place of the arbitration shall be in London, England and the arbitration shall be conducted in accordance with and governed by the laws of England, including the Arbitration Act 1950-1979 or as from time to time re-enacted or amended.
>
> . . .
>
> **Section 38**
>
> **JURISDICTION**
>
> The Agreement is subject to English law and practice and to the exclusive jurisdiction of the English courts, except as may be expressly provided herein to the contrary.

<u>Id.</u>  Plaintiff sought to arbitrate its dispute with Brooks in London, England under English law pursuant to the arbitration and jurisdiction clauses in the Binding Authority Agreements, and accordingly commenced the English arbitration in June 2004.  In November 2005, Plaintiff filed Particulars of Claims for each Binding Authority year from 1998 through and including 2001.  However, as of the date the last papers were submitted for this motion, Brooks has failed to serve defenses to any of Plaintiff's claims in the English arbitration or to respond to the claims in any meaningful way.  (Pl.'s Statement of Undisputed Facts ¶ 8).

The Binding Authority Agreements also required Brooks to obtain indemnity insurance under the following provision:

**Section 35**

**INDEMNITY INSURANCE**

The Coverholder shall maintain indemnity insurance providing coverage in connection with the operation of the Agreement with the limits accepted by the Underwriters for any liability arising out of:

35.1   any negligent act, error or omission by the Coverholder including any past or present director, partner or employee of the Coverholder;

35.2   any dishonest or fraudulent act or omission by the Coverholder including any past or present employee of the Coverholder;

35.3   any dishonest or fraudulent act or omission by any past or present director or partner of the Coverholder when such insurance is reasonably available.

Id. Pursuant to this clause, Brooks obtained a professional liability policy (no. MPL002118) (the "American Equity Policy"), which was issued by AEIC to cover errors and omissions. (Bracken Aff. Ex. G). The American Equity Policy contains effective dates of December 22, 2001 through December 22, 2002 and a retroactive date listed as January 1, 1990. Id. The American Equity Policy also contains three endorsements; "endorsement 3" purports to amend the policy's limits to $5 million per occurrence/$5 million in the aggregate. Id. There is also a provision in the American Equity Policy that governs actions against it. The American Equity Policy provides in pertinent part as follows:

**J.   Action Against Us**

No action may be brought against us [AEIC] concerning this policy unless:

1.   You [Brooks] have fully complied with all provisions of this Policy; and

      2.      The amount of your obligation to pay has been decided by judgment against you after actual trial or by written agreement between you, us and the claimant.  Any person, organization or their legal representative who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy.  No person or organization has a right under this Policy to include us in any action against you to determine your liability, nor will we be brought into such action by you or your representatives.

Id.

In its application for insurance from AEIC, Brooks was required to list all pending or potential claims.  (See Haplin Aff. ¶ 2; Ex. C).  Brooks included one potential claim in its application, unrelated to Plaintiff's claim.  Id.  AEIC's first notice of Plaintiff's potential claim was its November 6, 2002 receipt of a letter on behalf of Plaintiff.  (See Haplin Aff. ¶ 2).  AEIC, after investigating and monitoring the claim, advised Plaintiff's counsel in an April 20, 2004 letter that it was monitoring the potential claim and reserved its rights with respect to certain policy provisions.  (See Haplin Aff. ¶ 4; Ex. A).  In January 2006, AEIC disclaimed coverage to Plaintiff's claim based on the "territory" condition.  (See Haplin Aff. ¶ 4).  After this suit was commenced, AEIC agreed by letter dated December 12, 2006, to defend Brooks in the English arbitration regarding this matter, under a reservation of rights.  (Pl.'s Mot. Summ. J., Ex. I, AEIC Acceptance Letter).

A cross-claim was asserted by Brooks in its Answer, dated November 8, 2006, against AEIC for reimbursement costs incurred as a result of AEIC's alleged initial wrongful disclaimer of coverage.  To this date, Brooks has not produced any discovery in this matter or produced a witness for deposition.  (Def.'s Statement of Undisputed Facts ¶ 16).

The Court held a conference call with counsel for Alit, Brooks, and AEIC on October 25, 2007 to discuss the progress of the English arbitration and Brooks' progress in prosecuting its

cross-claim against AEIC. With the guidance of the Court, the parties agreed that Brooks is subject to arbitration in England and that AEIC must defend Brooks in the English arbitration.

## II.   STANDARD OF REVIEW

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party. Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). The Court's function "at the summary judgment stage . . . is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Id. at 252.

## III.   DISCUSSION

In this case, I must determine whether an injured party may bring suit against an insurer under the Federal Declaratory Judgment Act (the "Act"). Section 2201(a) of the Act provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. 2201(a). In addition, Federal Rule of Civil Procedure 57 allows the use of the Act as a means to obtain relief in the Federal Courts. Fed. R.Civ. P. 57. It further gives Federal Courts the discretion to hear such cases despite "[t]he existence of another adequate remedy." Id. To determine whether Plaintiff can bring suit against AEIC, the Court must first address the issue of standing.

**A.     STANDING UNDER THE FEDERAL DECLARATORY JUDGMENT ACT**

To properly adjudicate the issue of standing, it is first necessary to determine whether state or federal law controls. Defendants argue that Plaintiff, not an insured, or additional insured on the American Equity Policy, has no present standing to assert any claims against AEIC because: (1) New Jersey state common law prohibits third party actions against an insurer absent statutory or contractual provisions permitting it; and (2) the American Equity Policy between Brooks and AEIC specifically prohibits suits by either an injured party or the insured until damages have been fixed by a final judgment. On the contrary, Plaintiff argues that standing is governed by federal law and that this present action has been properly asserted under the Act.

The Third Circuit has held that under the Act, the issue of standing is determined by federal rather than state law. Fed. Kemper Ins. Co. v. Raucher, 807 F.2d 345, 352 (3d Cir. 1986); Acuity v. N. Cent. Video, 2007 U.S. Dist LEXIS 33540 *9 - 10 (D.N.D. May 7, 2007); Miller v. Augusta Mut. Ins. Co., 157 Fed. Appx. 632, 636-37 (4th Cir. 2005) (noting that "even if Virginia courts would conclude that the [injured party] lacked standing to pursue a declaratory judgment

action against [the insurer] it does not follow from that conclusion that [the injured party] lacks standing to pursue a declaratory judgment action in federal court"); Modern Equip. Co. v. Cont'l W. Ins., 146 F. Supp. 2d 987, 990 (S.D. Iowa 2001). "While state law must determine the substantive rights and duties of the parties to the insurance contract, the question of justiciability is a federal issue to be determined only by federal law." Fed. Kemper Ins. Co., 807 F.2d at 352; see Acuity, 2007 WL 1356919 at *4. The United States Court of Appeals for the Third Circuit has held that an injured party has standing against an insurance company, even though it is not insured by the insurance company.[1]  Fed. Kemper Ins. Co., 807 F.2d at 353.

Defendants correctly assert that under New Jersey common law, third party direct actions against an insurer are prohibited unless a potential claimant first obtains a judgment against the insured and receives it back unsatisfied. Caldwell Trucking PRP Group v. Spaulding Composites, Co. Inc., 890 F. Supp. 1247, 1253 (D.N.J. 1995); N.J.S.A. 17:28-2. However, Defendants fail to note that this cause of action was brought under the Act and that state common law does not control on the issue of standing.

Additionally, Defendants argue that the "action against company" provision of the American Equity Policy prevents: (1) an injured party from joining the insurer in an action

---

[1] In Fed. Kemper Ins. Co., the insurance company initiated the action against the injured party, converse to the situation present in this case. Here the injured party, Alit, sued the insurance company, AEIC. The court in Fed. Kemper Ins. Co., noted that the procedural posture of the action was especially persuasive because the injured party was forced into federal court. The present case is somewhat analogous, because Alit had no choice, when faced with a standstill of arbitration proceedings between itself and Brooks, to resort to the federal courts to seek a declaration of AEIC's obligation to defend Brooks in the English arbitration. AEIC's initial refusal to defend Brooks in the English arbitration effectively forced Alit to bring a cause of action in this Court. And now that the parties are in court, standing will not be denied.

against the insured; and (2) suits by either the injured party or the insured until damages have been fixed by a final judgment.  These arguments are based on the premise that the injured party's rights are derivative of the insured.  Therefore, to determine whether the American Equity Policy between Brooks and AEIC prevents Alit from bringing an action against AEIC as a third party, "[w]e must determine whether the rights of an injured party within the procedural context of a declaratory judgment action are truly derivative of the rights of the co-defendant insured."  Fed. Kemper Ins. Co., 807 F.2d at 351.

Alit was not a signing party to the American Equity Policy between Brooks and AEIC, and thus, not bound by such agreement unless derivative rights were established between Brooks, and Alit.  The Third Circuit has held that an injured party's rights are independent and not derivative of the insurer.[2]  Id. at 353.  Pursuant to the holding in Fed. Kemper. Ins., the rights of Alit are independent and not derivative of the rights of Brooks; and as a result the "action against company" provision in the American Equity Policy cannot be construed to prohibit or undermine the rights of Alit.   Therefore, this Court concludes that under federal common law, Alit has proper standing to assert its claims against AEIC.

B. **SUMMARY JUDGMENT COMPELLING BROOKS TO PARTICIPATE IN ENGLISH ARBITRATION IS GRANTED**

Plaintiff asks this Court to grant summary judgment compelling Brooks to arbitrate in England under the Binding Authority Agreements.  Counsel for Brooks has already filed papers with the Court stating that it does not oppose such motion and stated in a teleconference call with

---

[2] The Court noted that "because it has been held that a 'case or controversy' exists between the insurance company and the injured parties in the instant procedural posture, it would be error to hold that the default of the insured could foreclose the rights of injured parties."  Fed. Kemper Ins. Co., 807 F.2d at 354.

the Court that Brooks would participate in the English arbitration. Because this aspect of the motion is unopposed and Brooks has represented to the Court its willingness to participate in the English arbitration, the Court concludes that there are no issues of material fact pending. Therefore, summary judgment is granted in favor of Plaintiff.

C.     **SUMMARY JUDGMENT COMPELLING AEIC TO DEFEND BROOKS IN THE ENGLISH ARBITRATION IS GRANTED**

In addition, Plaintiff asks this Court to grant summary judgment compelling AEIC to defend Brooks in the English arbitration. After this suit was commenced, AEIC agreed by letter dated December 12, 2006, to defend Brooks in the English arbitration regarding the Binding Authority Agreements, under a reservation of rights. Because this aspect of the motion is unopposed and AEIC has made clear through its filings with this Court that it will participate in the English arbitration and defend Brooks, the Court concludes that there are no issues of material fact pending. Therefore, summary judgment is granted in favor of Plaintiff.

D.     **SUMMARY JUDGMENT ON POLICY LIMITS IS DENIED AS PREMATURE**

Finally, the Court must consider Plaintiff's motion to declare the American Equity Policy limits as $5,000,000. Fed. R. Civ. P. 56(f) states in pertinent part:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Id. Where requested documentation or information is in the exclusive possession of a party to the action, a continuance of summary judgment pursuant to Fed. R. Civ. P. 56(f) is appropriate. Froid v. Berner, 649 F. Supp. 1418, 1425 (D.N.J. 1986); see also Sebastian Int'l, Inc. v.

Consumer Contacts (PTY) Ltd. d/b/a 3-D, 1988 WL 24147 (D.N.J. Mar 11, 1988) (granting FRCP 56(f) continuance where defendants were in exclusive possession of information as to their potential knowledge of fraud between parties).

AEIC does not dispute that endorsement no. 3 to the American Equity Policy purports to amend the policy limits to $5 million per claim/$5 million aggregate. However, Brooks was required to list all pending or potential claims in its application for insurance from AEIC. AEIC seeks the necessary discovery to determine if Brooks fraudulently acquired the additional coverage with knowledge of Alit's or other pending claims. To date, Brooks has not produced its Fed. R. Civ. P. 26 initial discovery or any other discovery, including the production of witnesses for deposition. This makes it impossible for the Court to determine the American Equity Policy limits without allowing AEIC to conduct some discovery from Brooks. Therefore, the Court denies summary judgment without prejudice on the issue of the American Equity Policy limits and will allow Plaintiff to re-assert the issue when the English arbitration has come to a close, the present case is re-opened, and necessary discovery has been taken.

**IV.    CONCLUSION**

Thus, the Court holds that Plaintiff's Motion for Summary Judgment is granted in part and denied without prejudice in part for the abovementioned reasons, and furthermore orders that this case be administratively terminated with the right to reopen upon notification from counsel that the English arbitration, regarding the Binding Authority Agreements, has come to a close.[3]

---

[3] A cross-claim was asserted by Brooks against AEIC for reimbursement costs incurred as a result of AEIC's alleged initial wrongful disclaimer of coverage. The Court held a conference call with counsel for Alit, Brooks, and AEIC on October 25, 2007 to discuss the progress of the English arbitration and Brooks' progress in prosecuting its cross-claim. Counsel for Brooks and AEIC advised the Court that they are currently holding discussions to determine a

Dated: October 26, 2007

s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

---

reasonable amount for fees and that once all information has been exchanged it is likely that the cross-claim will be resolved.  The Court advised the parties that if a resolution is not reached, Brooks may re-open the case in connection with its cross-claim, regardless of whether the English arbitration has come to a close.